## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **R.B**., individually and on behalf of all others similarly situated,<br><br><br>Plaintiff,<br><br>v.<br><br><br>**United Behavioral Health**,<br><br>Defendant. | Case No.  1:21-cv-553 (DNH/CFH)<br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff R.B., on behalf of himself and on behalf of all others similarly situated, alleges, based on his knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the following:

### INTRODUCTION AND NATURE OF THIS ACTION

**1.** Plaintiff R.B. challenges Defendant's standardized practice of excluding from coverage all mental health and substance abuse treatment services rendered at residential treatment centers where any component of the center's programming is considered unproven, experimental or investigational. This coverage approach is not in parity with how Defendant covers unproven, experimental or investigational programming in comparable settings, such as skilled nursing facilities and rehabilitation hospitals, which are considered "comparable" under the federal Mental Health Parity and Addiction Equity Act.

2.      With this action, Plaintiff and class members seek to recover charges for services rendered at residential treatment center programs and further to enjoin Defendant from further violations of the Parity Act.

## JURISDICTION AND VENUE

3.      This Court has original jurisdiction under 28 U.S.C. § 1332(d) because: the amount in controversy exceeds $5 million, exclusive of interest and costs; more than two-thirds of the Class reside in states other than the state in which Defendant is a citizen; and at least one class member is diverse from the Defendant.

4.      This Court also has jurisdiction under 28 U.S.C. § 1331, as it arises under federal law.

5.      Venue is appropriate in this judicial district because the Plaintiff resides in this district, the Defendant conducts considerable business within this district, and many of the breaches described here occurred within this district.

6.      In conformity with 29 U.S.C. §1132(h), Plaintiff will serve the original Complaint by certified mail on the Secretary of Labor and the Secretary of the Treasury.

## PARTIES

7.      Plaintiff R.B., at all material times, was an individual citizen and resident of Rensselaer, New York. At relevant times, R.B. worked full-time for General Electric Company, which provided and sponsored his health insurance. R.B. is a citizen of New York.

8.    The mental health and substance abuse treatment services at issue in this action were received by R.B.'s son, J.B. J.B. was a minor at the time the services were received.

9.    Because of the intensely private nature of the medical services rendered that will be discussed here, and because Plaintiff's son was a minor at the time of the events described, this Complaint is using initials instead of the names of Plaintiff and his son. In conformity with Local Rule 5.2, Planitff will file under seal, and serve to Defendant, a reference list disclosing the identities of Plaintff and his son.

10.    Defendant United Behavioral Health, which operates under the brand OptumHealth Behavioral Solutions, is a corporation organized under California law with its principal place of business located in San Francisco, California. UBH is responsible for drafting and applying the internal level of care and coverage determinations described in this Complaint. Defendant also adjudicates all mental health and substance abuse treatment services mental healthcare and substance abuse claims for plaintiff's ERISA-regulated health insurance plans. In this Complaint, "UBH" refers to the named defendant and all parent, subsidiary, successor, predecessor and related entities to which these allegations pertain.

11.    In light of its central role in the mental health and substance abuse treatment services mental health and substance abuse-related claim adjudication process, UBH is an ERISA fiduciary as defined by 29 U.S.C. § 1104(a). As such, it is legally required to discharge its duties "solely in the interests of the participants and beneficiaries" and for the "exclusive purpose" of providing benefits to participants and

their beneficiaries" and paying reasonable expenses of administering the plan. It must

do so with reasonable "care, skill, prudence, and diligence" and in accordance with the

terms of the plans it administers, so long as such terms are consistent with ERISA. As a

fiduciary, UBH owes a duty of loyalty to plan participants and beneficiaries.

12.     Plaintiff's relevant summary plan description is attached to this

Complaint at **Exhibit A**.

FACTS

<u>**Insurance coverage promises**</u>

13.     General Electric's certificate of coverage provides that it covers only

"Eligible Expenses," which are "[s]ervices, supplies or treatments provided while the

plan is in effect that are determined by the Claims Administrator to be:

- Appropriate for and consistent with the diagnosis or symptoms;
- Consistent with accepted medical standards;
- Not Experimental or Investigational;
- Not provided solely on a convenience or personal basis;
- Employed appropriately and effectively with respect to the type and level of care; and
- Within any limits imposed by the plan (e.g., number of visits).

**Exhibit A, p. 101.**

14.     The plan further provides it will only cover the "Allowable Amount,"

which the certificate defines as "[t]he total dollar amount of an Eligible Expense that is

determined by your Claims Administrator to be payable for a covered benefit.

- **For Network Provider —** Eligible Expenses are based on contracted rates with the Provider.
- **For out-of-Network Provider —** Eligible Expenses are based on:

4

– Negotiated rates agreed to by the out-of-Network Provider and either the Claims Administrator or one of its vendors, affiliates or subcontractors; or

– A maximum payment allowance that will be the lowest of (a) the in-Network rate of the Claims Administrator, (b) the established Medicare reimbursement rates plus up to 25% or (c) the Provider's actual charges."

**Exhibit A, p. 100.**

15.     The certificate only authorizes coverage for services deemed to be

"Medically Necessary," which it defines as "[a] service, supply or procedure is

Medically Necessary and appropriate only if, in the Claims Administrator's judgment

and sole discretion, it is:

- Necessary and appropriate for the symptom, diagnosis, prevention or treatment of the participant's illness, Injury or condition;
- Consistent with the symptom, diagnosis, prevention or treatment of the participant's illness, Injury or condition;
- The most appropriate supply, treatment or level of service that can be provided safely to the member and, if the member is an inpatient, cannot be provided safely on an outpatient basis;
- Not primarily for the convenience of the participant, his family or provider; and
- Not a part of, or associated with, the participant's scholastic, educational or vocational training."

**Exhibit A, p. 103.**

16.      The certificate authorizes coverage for behavioral health and substance

abuse treatment received at a licensed residential treatment facility. **(Exhibit A, p. 36).**

The certificate also authorizes coverage at skilled nursing facilities. **(Exhibit A, p. 51).**

17.     Equine therapy is not mentioned in the certificate.

**J.B.'s background**

18.     J.B lives with his two adoptive parents, and has a younger adoptive sister.

19.     J.B. has the following diagnoses: Major Depressive Disorder; Generalized Anxiety Disorder; Attention-Deficit Hyperactivity Disorder; Oppositional Defiant Disorder; Cannabis Use Disorder; Nicotine Dependence; Opioid Use Disorder; Hallucinogenic Use Disorder; Alcohol Use Disorder; and Parent-Adopted Child Conflict.

20.     J.B.'s difficulties escalated in March 2020, resulting in conflicts at home with incidents of physical aggression such as punching walls, and running away for multiple days at a time. J.B suffered from insomnia and exhibited multiple depressive symptoms. J.B. was admitted to Newport Academy, a licensed residential treatment center, on March 27, 2020 and stayed until his discharge on June 8, 2020.

21.     The treatment team at Newport Academy recommended J.B. transition immediately following discharge to a longer-term treatment program, concluding that his risk of relapse after returning home was too high, and also to provide the appropriate amount of time to address J.B.'s list of underlying co-morbid mental illness. Based on Newport Academy's recommendation, J.B started treatment at Arivaca Boys Ranch, an Arizona-licensed residential treatment center, on June 8, 2020.

22.     Throughout J.B.'s treatment at Arivaca, two issues dominated his treatment. First, J.B. maintained that he would continue drug and alcohol use upon leaving Arivaca and, second, J.B. consistently struggled with social interactions.

23.     J.B. was discharged from Arivaca on April 17, 2021.  As of that date, he had incurred, and R.B. paid, $66,800 for mental health and substance abuse treatment services rendered at Arivaca.

24.     Among other things, Arivaca offers individual counseling, group therapy, family therapy and addiction recovery.

**Defendant's Denial of Coverage**

25.     Defendant denied R.B.'s claim for coverage. Under the certificate, R.B. is required to exhaust two internal appeals before he may commence litigation. Defendant denied R.B.'s first appeal on June 10, 2020 "[b]ased on the provider being unable to be authorized … due to the unproven therapy of equine therapy."

26.     Defendant denied R.B.'s second appeal by letter dated December 10, 2020. The basis for denial was "[t]his facility has service components not consistent with Guidelines and are considered unproven." This second denial informed R.B. that "[a]ll internal appeals … have been exhausted."

CLASS ALLEGATIONS

27.     R.B. brings this action individually and on behalf of the following Class pursuant to Rules 23(a) and 23(b)(1)-(3) of the Federal Rules of Civil Procedure:

> *All persons covered under ERISA-governed health care plans, administered or insured by United Behavioral Health, whose requests for coverage for mental health and substance abuse treatment services received at a licensed residential treatment center were denied in total based on its determination that a component of such services is considered experimental, investigational, or unproven (the "Class").*

28.     Excluded from the Class are: the officers, directors, or employees of the Defendant; any judicial officer presiding over this action and the members of his/her immediate family and judicial staff.

29.     The Class period began six years before the commencement of this action and concludes on the date the class is certified.

30.     The exact number of members of the Class is currently unknown and unavailable to Plaintiff at this time, but it is estimated that the Class consists of several hundreds or thousands of Class members geographically dispersed throughout the United States. Accordingly, Class membership is so numerous that joinder of individual members of the Class is impracticable.

31.     The Class is ascertainable because its members can be readily identified using Defendant's claims data. Membership of the Class is defined based on objective criteria.

32.     **Predominance:** Common questions of law and fact exist that predominate over any questions affecting only individual Class members. These common legal and factual questions, which do not vary from Class member to Class member and which may be determined without reference to any Class member's individual circumstances, include but are not limited to:

a.     Whether Defendant acted as an ERISA fiduciary when it made coverage denial determinations concerning mental health and substance abuse treatment services;

b.     Whether Defendant applied a policy of total denial of coverage for mental health and substance abuse treatment services when it determined that a component of such services is experimental, investigational, or unproven;

c.    Whether Defendant's creation, development, implementation, and

application of such a policy of total denial of coverage for mental health

and substance abuse treatment services violates the federal Parity Act,

which is incorporated in ERISA;

d.    Whether Class members are entitled to equitable relief, including but not

limited to injunctive relief and equitable restitution; and

e.    Whether Defendant is liable for attorneys' fees and costs.

33.    Defendant engaged in a common course of conduct by Defendant that

gives rise to all claims. The claims are typical of the claims of all Class members because

Defendant injured all Class members through a uniform course of conduct and

employing the same coverage practices for each and every Class member. The same

legal theories apply to each Class member, and Plaintiff seeks the same forms of relief

for all Class Members. There are no defenses available to Defendant that are unique to

Plaintiff.

34.    R.B. can fairly and adequately protect and represent the interests of each

member of both classes because he has no conflict of interest in this cause of action with

the class and its membership.  R.B.'s interests are perfectly aligned with the members of

the class and R.B. and the members of the class have a mutual interest in seeking

damages and other relief against Defendant. R.B.  is represented by competent and

experienced class action counsel.

35.    **Superiority –** A class action is superior to other available means for the

fair and efficient adjudication of this controversy since individual litigation of all Class

member claims is impracticable. Even if every Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts, in which individual litigation of hundreds of cases would proceed. Individual litigation presents a potential for inconsistent or contradictory judgments, the prospect of a race for the courthouse, and an inequitable allocation of recovery among those with equally meritorious claims. Individual litigation increases the expense and delay to all parties and the court system in resolving the legal and factual issues common to all Class members' claims relating to Defendant's unlawful conduct. By contrast, the class action device presents far fewer management difficulties and provides the benefit of a single adjudication, economies of scale, and comprehensive supervision by a single court.

36. In the alternative, this action may be properly maintained under Rules 23(b)(1) and (2) of the Federal Rules of Civil Procedures as a class action because:

a. the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Defendant; or

b. the prosecution of separate by individual members of the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other members of the Class not parties to the adjudications, or substantially impair or impeded their ability to protect their interests; or

c.     Defendant has acted or refused to act on grounds generally applicable to

the Class, thereby making appropriate final injunctive or corresponding

declaratory relief with respect to the Class as a whole.

### COUNT I
### CLAIM FOR PLAN BENEFITS

37.     Plaintiff incorporates all other paragraphs of this Complaint and restates

them.

38.     Plaintiff brings this claim on his own behalf and on behalf of the Class

under 29 U.S.C. § 1132(a)(1)(B) for violations of the Parity Act, which is incorporated

into ERISA, at 29 U.S.C. § 1185a.

39.     Under the Parity Act, health insurers must "treat sicknesses of the mind in

the same way that they would a broken bone." *New York State Psychiatric Ass'n, Inc. v.

United Health Grp.*, 980 F. Supp.2d 527, 542 (S.D.N.Y.), *aff'd in part, vacated in part*, 798

F.3d 125 (2d Cir. 2015).

40.     A "treatment limitation" is a limit on either "the scope or duration of

treatment." 29 U.S.C. § 1185(a)(3)(B)(iii).

41.     Regulations promulgated under this statute focus the Court's analysis in

two respects. First, both "quantitative" and "nonquantitative" treatment limitations

may run afoul of the Parity Act.  45 C.F.R § 146-136(a). Whereas a quantitative limitation

is reduceable to a number, a nonquantitative treatment limitation is any other limitation

on the scope or duration of treatment. 45 C.F.R. § 146-136(c)(4)(i).

42.     Second, any limitation applied to mental health treatment must be scrutinized by comparing it to the limitations placed on an analogous medical or surgical treatment in the same classification. 45 C.F.R. § 146-136(c)(2)(i)-(ii).

43.     Defendant's denial of coverage for medically necessary services rendered at residential treatment centers because of the inclusion of some programming it finds unproven is not in parity with its coverage position for medically necessary services rendered at skilled nursing facilities and rehabilitation hospitals, which are services in the same classification as residential treatment center services and also comparable to residential treatment center services under the Parity Act. Where certain programming at skilled nursing facilities and rehabilitation facilities is found to be unproven, those services are not covered. But Defendant does not take the position that inclusion of those services voids all coverage obligations for services incurred at skilled nursing facilities and rehabilitation hospitals – just the services found to be unproven.

44.     This disparate treatment in comparable services violates the federal Parity Act.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for relief and judgment against Defendant as follows:

A.      Certifying the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as a representative of the Class, and designating Plaintiff's counsel as Class Counsel;

B.      Ordering Defendant to reprocess Class claims in a manner compliant with

the federal Parity Act. In so doing, Defendant may not raise new coverage

defenses to Class members' claims that it did not raise the first time;

C.      For declaratory and equitable relief, including restitution and

disgorgement;

D.      Awarding Plaintiff and the Class the costs of prosecuting this action,

including expert witness fees;

E.      Awarding Plaintiff and the Class reasonable attorneys' fees and costs as

allowable by law;

F.      Awarding pre-judgment and post-judgment interest; and

G.      Granting any other relief as this Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all counts so triable.


Dated: May 12, 2021                    Respectfully submitted,


                                       */s/*Randi A. Kassan
                                       Randi A. Kassan (N.D.N.Y. Bar No. 517821)
                                       MILBERG COLEMAN BRYSON PHILLIPS
                                       GROSSMAN LLC
                                       100 Garden City Plaza, Suite 500
                                       Garden City, NY  11530
                                       Telephone:  (516) 741-5600
                                       rkassan@milberg.com

                                       Greg Coleman
                                       Arthur Stock
                                       MILBERG COLEMAN BRYSON PHILLIPS
                                       GROSSMAN LLC

800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone : (865) 247-0080
gcoleman@milberg.com
astock@milberg.com

Jordan Lewis
JORDAN LEWIS, P.A.
4473 N.E. 11th Avenue
Fort Lauderdale, FL 33334
Telephone: (954) 616-8995
jordan@jml-lawfirm.com

Edward A. Wallace
Mark J. Tamblyn
WEXLER WALLCE LLP
55 West Monroe Street, Suite 3300
Chicago, IL 60603
Telephone: (312) 346-2222
eaw@wexlerwallace.com
mjt@wexlerwallace.com

Charles J. Crueger
Erin K. Dickinson
CRUEGER DICKINSON LLC
4532 N. Oakland Ave.
Whitefish Bay, WI 53211
Telephone : (414) 210-3900
cjc@cruegerdickinson.com
ekd@cruegerdickinson.com

*Attorneys for Plaintiff*