UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
R.B., individually, and on behalf of all
those similarly situated,

                    Plaintiff,


        -v-                                          1:21-CV-553

United Behavioral Health,

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                          OF COUNSEL:

JORDAN LEWIS, P.A.                    JORDAN LEWIS, ESQ.
*Attorneys for Plaintiff*
4473 N.E. 11th Avenue
Fort Lauderdale, FL 33334

MILBERG COLEMAN BRYSON               RANDI A. KASSAN, ESQ.
    PHILLIPS GROSSMAN, PLLC          ARTHUR M. STOCK, ESQ.
*Attorneys for Plaintiff*            RYAN P. McMILLAN, ESQ.
100 Garden City Plaza, Suite 500
Garden City, NY 11530

GIBSON DUNN & CRUTCHER LLP           GEOFFREY M. SIGLER, ESQ.
*Attorneys for Defendant*            CLARE F. STEINBERG, ESQ.
1050 Connecticut Avenue NW           JAMES A. TSOUVALAS, ESQ.
Washington, DC 20036-5306

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I.   INTRODUCTION

On May 12, 2021, plaintiff RB[1] filed this ERISA[2] action against defendant United Behavioral Health ("UBH" or "defendant").  Plaintiff's one-count complaint challenges defendant's alleged practice of excluding from coverage all mental health and substance abuse treatment services rendered at residential treatment centers where any component of the center's programming is considered "unproven, experimental, or investigational." Dkt. No. 1 ("Compl.") at ¶ 1.

On January 9, 2023, RB moved for class certification.  Dkt. No. 70.  The motion has been fully briefed, and the Court will now consider it on the basis of the parties' submissions without oral argument.

## II.   BACKGROUND

RB, an employee of General Electric ("GE"), participates in an employer-sponsored ERISA-regulated health plan (the "Plan").  His adoptive minor son, JB, who has been diagnosed with numerous[3] mental health disorders, is covered under this plan.  The Plan is "self-funded," meaning that GE (not UBH) is financially responsible for paying any covered benefits.  Under the

---

[1] On January 9, 2023, the parties stipulated that this action may proceed using pseudonyms for plaintiff and his family members.  Dkt. No. 76.

[2] 29 U.S.C. § 1132(a)(1)(B).

[3] JB has been diagnosed with: Major Depressive Disorder; Generalized Anxiety Disorder; Attention-Deficit Hyperactivity Disorder; Oppositional Defiant Disorder; Cannabis Use Disorder; Nicotine Dependence; Opioid Use Disorder; Hallucinogenic Use Disorder; Alcohol Use Disorder; and Parent-Adopted Child Conflict.

Plan, GE delegated certain plan administration responsibilities to third-party administrators, including UBH, in exchange for a flat, per-member-per-month administrative fee.  Through this arrangement, UBH makes coverage determinations with respect to behavioral health services under the Plan.

On March 27, 2020, JB was admitted to Newport Academy ("Newport"), a licensed residential treatment center.  JB remained at Newport until his discharge on June 8, 2020.  The treatment team at Newport recommended JB transition immediately following discharge to a longer-term treatment program, concluding that his risk of relapse after returning home was too high, and also to provide the appropriate amount of time to address JB's list of underlying co-morbid mental illnesses.  Based on Newport's recommendation, JB began treatment at Arivaca Boys Ranch ("Arivaca"), an Arizona-licensed residential treatment center, on June 8, 2020.  Arivaca offers services such as individual counseling, group therapy, family therapy, and addiction recovery.  On April 17, 2021, JB was discharged from Arivaca.  By that point, JB had incurred—and RB had paid—$68,417.99 in costs for mental health and substance abuse treatment services rendered at Arivaca.

Arivaca sought coverage from UBH for JB's treatment before his stay began.  UBH initially denied the coverage request, and RB appealed.  On June 10, 2020, UBH denied RB's first appeal "[b]ased on the provider being unable to be authorized … due to the unproven therapy of equine therapy."

RB then appealed this denial, which UBH affirmed in a letter dated

December 12, 2020.  Among other things, the letter stated that Arivaca had

"service components not consistent with Guidelines and are considered

unproven."  In this second denial, UBH informed RB that all internal appeals

had been exhausted.

RB now moves to certify a class of:

> All persons covered under ERISA-governed health care plans,
> administered or insured by United Behavioral Health, whose requests for
> coverage for mental health and substance abuse treatment services
> received at a licensed residential treatment center were denied in total
> based on its determination that a component of such services is considered
> experimental, investigational, or unproven.

Compl. ¶ 27.

## III.   DISCUSSION

### 1.  Legal Standard

Federal Rule of Civil Procedure ("Rule") 23(a) contains four explicit

prerequisites to class certification: (1) numerosity; (2) commonality;

(3) typicality; and (4) adequacy of representation.  *Glatt v. Fox Searchlight*

*Pictures, Inc.*, 811 F.3d 528, 538 (2d Cir. 2016).  "The party seeking class

certification bears the burden of establishing by a preponderance of the

evidence that each of Rule 23's requirements has been met."  *Myers v. Hertz*

*Corp.*, 624 F.3d 537, 547 (2d Cir. 2010).  As discussed *infra* § 2.C, Rule 23(b)

also requires a party to satisfy at least one of three additional elements.

2. <u>Analysis</u>

RB seeks to certify a class defined as:

All persons covered under ERISA-governed health care plans,
administered or insured by United Behavioral Health, whose requests for
coverage for mental health and substance abuse treatment services
received at a licensed residential treatment center were denied in total
based on its determination that a component of such services is considered
experimental, investigational, or unproven.

UBH opposes certification.  The Court addresses standing, as well as each

Rule 23 factor, in turn.

*A. Standing*

"Article III standing requires a concrete injury even in the context of a

statutory violation."  *Thole v. U.S. Bank, N.A.*, 140 S. Ct. 1615, 1618 (2020).

To establish standing under Article III of the Constitution, a plaintiff must

show: (1) that he suffered an injury in fact that is concrete, particularized,

and actual or imminent; (2) that the injury was caused by defendant; and

(3) that the injury would likely be redressed by the requested judicial relief.

*Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).  At

the class certification stage, the Second Circuit has approved of evaluating

standing by relying on the pleadings and "constru[ing] the complaint in favor

of the complaining party."  *Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323

F.R.D. 145, 154 (S.D.N.Y. 2017) (quoting *Denney v. Deutsche Bank AG*, 443

F.3d 253, 263 (2d Cir. 2006)).  In an ERISA class action, as in other class

actions, only one of the named plaintiffs is required to establish standing to seek relief on behalf of the entire class. *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 241 (2d Cir. 2007).

RB has established that he has both statutory and Article III standing to bring this action. ERISA provides that a civil action may be brought by a participant or beneficiary "to recover benefits due … under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). RB is a participant under the Plan, and thus has statutory standing.

RB also satisfies the three *Lujan* factors. Plaintiff alleges that he and his wife paid $68,417.99 to cover his son's services at Arivaca after UBH improperly withheld benefits due under the Plan.[4] These allegations satisfy the first two *Lujan* factors. Plaintiff also satisfies the final *Lujan* factor—he seeks, *inter alia*, for defendant to reprocess class members' claims in a manner compliant with the Parity Act, as well as restitution and disgorgement of the withheld benefits. *See* Compl. at 12–13. It is likely that this requested relief would redress plaintiff's alleged injury.

---

[4] That Arivaca rendered services to plaintiff's minor son does not impact the analysis. *See Potter v. Blue Shield*, 2014 U.S. Dist. LEXIS 174321, *18 (C.D. Cal. Nov. 26, 2014) (finding that a plan participant may plead a plausible claim of injury-in-fact concerning reimbursement due to him as subrogee of his son's claim as a result of his own payment of those expenses on his son's behalf").

*B. Rule 23(a)*

### i.    Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." The numerosity inquiry is not simply mathematical; it turns "not on mere numbers" but on "all the circumstances surrounding a case." *Pa. Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014); *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993).[5]

RB has carried his burden on this element. His submissions identify between 137 and 724 people who appear to be class members.

### ii.    Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." In other words, the Rule requires that "there be issues whose resolution will affect all or a significant number of the putative class members." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015). "Even a single common question will do." *Raymond*, 2022 WL 97327, at *4 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011)).

RB has also carried his burden on this element. Plaintiff has demonstrated that there is a single overarching issue defining this case:

---

[5] "The relevant considerations include judicial economy, the geographic dispersion of class members, the financial resources of class members, and the ability of claimants to institute individual suits." *Raymond v. New York State Dep't of Corr. & Cmty. Supervision*, 2022 WL 97327, at *3 (N.D.N.Y. Jan. 11, 2022).

whether UBH's coverage protocol, which voices all coverage obligations where a provider offers a service that defendant believes is "experimental, investigational or unproven" is in parity with its coverage protocols for skilled nursing services.

### iii.   Typicality

Rule 23(a)(3) requires that "the claims . . . of the representative parties [be] typical of the claims or defenses of the class."  The typicality requirement is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar arguments to prove the defendant's liability."  *V.W.*, 236 F. Supp. 3d at 572–73.

RB's claims are typical of the class.  His claim arose in the same manner as all others in the putative class.  UBH's coverage protocol is uniform for these individuals, as is defendant's application of this protocol.

### iv.   Adequacy

Rule 23(a)(4) requires that the plaintiffs "will fairly and adequately protect the interests of the class."  Adequacy requires: (1) that the proposed class representative have an interest in vigorously pursuing the class's claims and have no interests antagonistic to the interests of other class members, *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006); and (2) class counsel must be qualified, experienced, and able to conduct the litigation,

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).

RB has carried his burden on this final Rule 23(a) requirement.  RB has submitted a declaration outlining, *inter alia*, that: (i) he is familiar with his responsibilities as a class representative and willingly undertakes his duty to act in the best interests of the class; (ii) he is not aware of any conflicts with members of the proposed class that would disqualify him or make it difficult to carry out his class representative obligations; (iii) he has participated actively in this lawsuit; and (iv) he recognizes and accepts that as class representative he will not receive any special benefits or recovery not afforded to other members of the class.

As for the second factor, which has now been subsumed under Rule 23(g), it is clear that class counsel is adequately qualified and experienced.  Counsel has done extensive work in identifying the claims in this action, are highly experienced in class action litigation, specifically ERISA class actions, and are willing to commit the necessary resources to this litigation.

*C. Rule 23(b)*

A proposed class must also satisfy at least one of the three requirements enumerated in Rule 23(b).  *See In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 117 (2d Cir. 2013).  RB seeks class certification under Rules 23(b)(1) or 23(b)(2), or, in the alternative, Rule 23(b)(3).  The Court finds

certification under Rule 23(b)(1) is appropriate and need not address the latter two rules.

"Rule 23(b)(1) applies ... where individual adjudications 'as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.'" *Dukes*, 564 U.S. at 361 n.11 (quoting Rule 23(b)(1)(B)).

Rule 23(b)(1) permits class certification if:

[P]rosecuting separate actions by individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

"Most ERISA class action cases are certified under Rule 23(b)(1)." *Kanawi v Bechtel Corp.*, 254 F.R.D. 102, 111 (N.D. Cal. 2008) (Breyer, J.). "The language of subdivision (b)(1)(A), addressing the risk of 'inconsistent adjudications,' speaks directly to ERISA suits, because the defendants have a statutory obligation, as well as a fiduciary responsibility, to 'treat the members of the class alike.'" *In re Citigroup Pension Plan ERISA Litig.*, 241 F.R.D. 172, 179 (S.D.N.Y. 2006) (quoting *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 614 (1997)). Subsection (b)(1)(B) applies "where any individual

adjudication by a class member disposes of, or substantially affects, the interests of absent class members." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999).

The proposed class is certified under both subparts of Rule 23(b)(1).  UBH is a fiduciary and is bound to follow the terms of the Plan.  As for subsection (b)(1)(A), which considers potential prejudice to defendant, it would be in an impossible position were another court to interpret the Plan differently in a separate action.  Defendant would be forced to select which judgment to follow, creating a conflict between treating plan participants alike and complying with each separate court order.  *See Caufield v. Colgate-Palmolive Co.*, 2017 WL 3206339, at *6 (S.D.N.Y. July 27, 2017); *Z.D. v. Group Health Coop.*, 2012 U.S. Dist. LEXIS 76498, at *17–18 (W.D. Wash. June 1, 2012).

As for subsection (b)(1)(B), which contemplates possible prejudice to putative class members, ERISA requires (where appropriate) that plan provisions be applied consistently with respect to similarly situated claimants.  *See* 29 C.F.R. §2560.503-1(b)(5).  Accordingly, were this Court to find that the Plan requires defendant to act in a certain way, ERISA would require it to act similarly with respect to all plan beneficiaries.  *See Caufield*, 2017 WL 3206339, at *6 ("because a determination of any one of the proposed class members' claims would have a strong, if not determinative, influence on the outcome of other class members' claims, the proposed class is certified

under Rule 23(b)(1)(B)"). This is the "quintessential (b)(1)(B) scenario." *Z.D.*, 2012 U.S. Dist. LEXIS 76498, at *18.

    *D. Rule 23(g)*

    Finally, RB moves to appoint Jordan Lewis, P.A. and Milberg Coleman Bryson Phillips Grossman, PLLC, as co-counsel for the class. Under Rule 23(g)(1), "[u]nless a statute provides otherwise, a court that certifies a class must appoint class counsel." In appointing class counsel, a court must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. FED. R. CIV. P. 23(g)(1)(A). A court may also consider, *inter alia*, "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."

    Upon review, this motion will be granted for the reasons set forth *supra* § II.B.iv.

## IV.  <u>CONCLUSION</u>

    For the reasons stated above, RB's motion for class certification is GRANTED. Plaintiff's claim is certified as a class action on behalf of a class defined as:

All persons covered under ERISA-governed health care plans, administered or insured by United Behavioral Health, whose requests for coverage for mental health and substance abuse treatment services received at a licensed residential treatment center were denied in total based on its determination that a component of such services is considered experimental, investigational, or unproven.

Named plaintiff RB is appointed as class representative and Jordan

Lewis, P.A. and Milberg Coleman Bryson Phillips Grossman, PLLC, are

appointed as co-class counsel.

IT IS SO ORDERED.

_____
David N. Hurd
U.S. District Judge

Dated:  September 14, 2023
        Utica, New York.