# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

### Case No.: 1:21-CV-00553-DNH-CFH

R.B., individually, and on behalf
of all those similarly situated;

       Plaintiff,

v.

United Behavioral Health;

       Defendant.

_____/


## PLAINTIFFS' MOTION
## FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Randi A. Kassan (N.D.N.Y. Bar No. 517821)
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN
100 Garden City Plaza, Suite 500
Garden City, NY 11530

Arthur M. Stock (admitted *pro hac vice*)
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN
800 S Gay Street - Suite 1100
Knoxville, TN 37929

Jordan Lewis (admitted *pro hac vice*)
JORDAN LEWIS, P.A.
4473 N.E. 11th Avenue
Fort Lauderdale, FL  33334

TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................1

II.   SETTLEMENT DETAILS AND BENEFITS ........................................3

III.  NOTICE TO THE CLASS.......................................................................5

IV.   CAFA NOTICE .......................................................................................6

V.    THE SETTLEMENT SHOULD BE APPROVED .................................6

    A.    Legal standard ...............................................................................6

    B.    Rule 23(e)(2)(A)-(B) – *Procedural fairness* .................................7

        1.    Rule 23(e)(2)(A) – adequate representation by class
            representatives and class counsel .......................................7

            a.    Class representatives ................................................7

            b.    Class counsel............................................................8

    C.    Rule 23(e)(2)(C)-(D) – *Substantive fairness* .......................11

        1.    Rule 23(e)(2)(C)...............................................................11

            a.    Costs, risk and delay of trial and appeal ................11

                 i.    Complexity, expense and likely duration of
                    litigation.............................................. 11

                ii.   Risks of establishing liability................. 12

                iii.  Risks of establishing damages..................... 14

                iv.   Risks of maintaining the class through trial.............. 15

            b.    Effectiveness of distributing relief to the class ......16

            c.    The terms of any proposed award of attorneys' fees............17

            d.    Release from liability ..............................................18

         2.    Rule 23(e)(2)(D) ..............................................................19

    D.    Remaining *Grinnell* tests .........................................................20

        1.    Reaction of the class.........................................................20

         2.    Stage of the proceedings and amount of discovery
            completed ..........................................................................21

         3.    Ability of UBH to withstand greater judgment.................21

         4.    Range of reasonableness of the settlement in light of the best
            possible recovery and all the attendant risks of litigation ...............22

VI.   CONCLUSION...........................................................................................24

TABLE OF AUTHORITIES

**Cases**                                                                        **Page number**

*A.G. v. Cmty. Ins. Co.*, 2020 U.S. Dist. LEXIS 223533
(S.D. Ohio Nov. 30, 2020)……………………………………………………..24

*Bast v. Prudential Ins. Co. of America*, 150 F.3d 1003 (9th Cir. 1998), *cert. denied*…………..15

*Brna v. Isle of Capri Casinos, Inc.*, 2018 U.S. Dist. LEXIS 26662
        (S.D. Fla. Feb. 20, 2018)………………………………………………….…………...9

*Caccavale v. Hewlett-Packard Co.*, 2025 U.S. Dist. LEXIS 47302
        (E.D.N.Y. March 14, 2025)…………………….………………………..…………18, 20

*Christine S. v. Blue Cross Blue Shield of N.M.*, 2021 U.S. Dist. LEXIS 199330
        (D. Utah Oct. 14, 2021)……………………………….…………………………..24

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2nd Cir. 2001………….………..…….……..….…..8

*D.T v. NECA/IBEW Family Medical Care Plan*, 2019 U.S. Dist. LEXIS 50683
        (W.D. Wash. March 26, 2019)……………………………………………...……15

*Detroit v. Grinnell Corp.*, 495 F.2d 448 (2nd Cir. 1974)…………………..……..……*passim*

*Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290 (E.D.N.Y. 2015)………21

*Heller v. Quovadx, Inc.*, 245 Fed. Appx. 839 (10th Cir. 2007)…………………….…………...2

*Hilderbrand v. Nat'l Elec. Ben Fund*, 2016 U.S. Dist. LEXIS 18574
        (C.D. Ill. Feb. 16, 2016)…………………………………………………...……13

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*
        909 F. Supp. 2d 259 (S.D.N.Y. 2012)…………………………………...……16

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
        2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007)……………………..…...16

*In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004)……………..…12

*In re Mercedes-Benz Tele Aid Contract Litig.*, 267 F.R.D. 113, 135 (D. N.J. 2010)………..…10

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
        330 F.R.D 11 (E.D.N.Y 2019)…………………………..………….……………..….…..7, 11

*In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp.2d 706 (E.D. Pa. 2001)…………………….....23

*In re Sumitomo Copper Litig.*, 189 F.R.D. 274 (S.D.N.Y. 1999)……………………......……12

*In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319 (S.D.N.Y. 2005)……………………………………………………………………………16

*Johnson v. Fujitsu Tech. & Business of Am., Inc.*, 2018 U.S. Dist. LEXIS 80219 (N.D. Cal. May 11, 2018)……………………………….………………………………23

*Jonathan Z. v. Oxford Health Plans*, 2022 U.S. Dist. LEXIS 121033 (D. Utah July 7, 2022)…………………………………………………………..19, 24

*K.D. v. Anthem Blue Cross & Blue Shield*, 2023 U.S. Dist. LEXIS 167836 (D. Utah Sept. 20, 2023)…………………………………………………….…13

*Klein ex rel. Ira v. PDG Remediation, Inc.*,  1999 U.S. Dist. LEXIS 650 (S.D.N.Y. Jan. 28, 1999)…………………………….………………………….…21

*L.P. v. BCBSM, Inc.*, 2020 U.S. Dist. LEXIS 35239 (D. Minn. Jan. 17, 2020)…………..…..13

*Marin v. 310 Bowery Grp. LLC*, 2025 U.S. Dist. LEXIS 53631 (S.D.N.Y. March 24, 2025)…………………………………………………………20

*Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611 (S.D.N.Y. 2012)……………………......……………………………………………………22

*Newman v. Stein*, 464 F.2d 689 (2d Cir. 1972)…………………………………………….22

*R.B. v. United Behav. Health,* 2023 U.S. Dist. LEXIS 162918 (N.D.N.Y. Sept. 14, 2023)…………………………………………….....…3, 4, 8

*Robertson v. National Basketball Association*, 556 F.2d 682 (2nd Cir. 1977)…………..……..10

*Rodriguez v. It's Just Lunch Int'l,* 2019 U.S. Dist. LEXIS 228270 (S.D.N.Y. Feb. 28, 2019)…………………………………………………………14

*Schutter v. Tarena Int'l, Inc.*, 2024 U.S. Dist. LEXIS 161838 (E.D.N.Y. Sept. 9, 2024)…………………………………………………………17

*Sims v. BB&T Corp.*, 2019 U.S. Dist. LEXIS 75837 (M.D.N.C. May 6, 2019)…………......……23

iv

*Sykes v. Mel Harris & Assocs., LLC*, 2016 U.S. Dist. LEXIS 74566
(S.D.N.Y. May 24, 2016)…………………………………………………………12

*TBK Partners, Ltd. v. Western Union Corp*, 675 F.2d 456 (2nd Cir. 2020)………………..….10

*T.G. v. United Healthcare Servs.*, 2020 U.S. Dist. LEXIS 235536
(D. Minn. Dec. 15, 2020)…………………………………………………………24

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 2018 U.S. Dist. LEXIS 127131
(C.D. Cal. July 30, 2018)…………………………………………………………23

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2nd Cir. 2005)………………....18, 22

*Wilson v. Anthem Health Plans of Ky., Inc.*, 2017 U.S. Dist. LEXIS 572
(W.D. Ky. Jan. 4, 2017)…………………………………………………….………15

*Wright v. Stern*, 553 F. Supp. 2d 337 (S.D.N.Y.
2008)…………………………….………………………………………………20

## **Rules**

Fed. R. Civ. P. 23……………………………………………………………….*passim*

Fed. R. Civ. P. 23 advisory committee's notes to 2018 amendment……………..……...*passim*

# I.     INTRODUCTION

The settlement before the Court easily clears the requirements for final class action approval found in Fed. R. Civ. P. 23(e)(2) and *Detroit v. Grinnell Corp.*[1] This is a good settlement. Among other things: 1) it involves the first Rule 23 class of persons who are covered under multiple health plans suing under the Mental Health Parity and Addiction Equity Act who achieved certification over vigorous opposition; 2) it is one of the first successful "as applied" Parity Act cases; 3) it is favored by more than 98 percent of the class; 4) it provides substantial relief – ranging from about $950 to about $19,000 per class member – as benefits to cover "proven services" at treatment programs that defendant United Behavior Health rejected because – it claimed – the services were "experimental, investigational or unproven"(hereafter, shortened to "experimental").

There are objections. While they are seriously offered, they are way off the mark. Sixteen persons, all represented by the same lawyer (hereafter, "King Objectors") have three complaints. Most of these persons aren't class members; all their objections are meritless.

*First,* the King Objectors argue that the release is too broad, "seep[ing] claims into the Class definition that … should not be included."[2] The King Objectors argue that it is unfair that the class includes persons treated at both residential treatment centers and wilderness therapy programs where the certified class is defined to include services received at a licensed residential treatment center.[3] (The King Objectors use the same rationale to

---

[1] 495 F.2d 448 (2nd Cir. 1974).
[2] King Obj. at 1.
[3] *Id.*

1

challenge the standing of named plaintiff R.B.**4**) *The problem: All class members, including the King Objectors, sought coverage for residential treatment from UBH. In other words, the class – at every stage in this litigation - includes persons who received treatment at wilderness therapy programs as long as those persons requested coverage at the residential level of care.*

*Second,* the King Objectors argue that the class is improperly certified under Fed. R. Civ. P. 23(b)(1).**5** *The problem: This identical argument was rejected by this Court, and the 2nd Circuit refused to hear UBH's request for interlocutory appeal. In this context, the argument is improperly raised with this Court. It can only be raised, if at all, on appeal.*

*Third,* the King Objectors argue that the *Grinnell* requirements aren't met. *The problem: the King Objectors consistently mangle the Grinnell elements, contaminating their analysis.*

These points are discussed in detail below.

One more thing. While 18 persons filed objections there are only really four objectors for this Court to address.  Two objectors – Kayley Seale and Katrina Seale – have withdrawn their objections.**6** Eight others - Erin Leigh Peck, Annie Fitzgerald, Rob E., D.E., William H., J.H., J.H.-2 and S.H – are not class members.  Fed. R. Civ. P 23(e)(5) provides only that "class member[s] may object to" a proposed class settlement. Non-class members "have no standing to object."**7** Erin Leigh Peck, Annie Fitzgerald, Rob E., D.E.,  William H., J.H., J.H.-2 and S.H. *disclaim* standing, asserting that they haven't received class notice **8**

---

**4** *Id.* at 2.

**5** *Id.*

**6** Docket Entry #130.

**7** *Heller v. Quovadx, Inc.,* 245 Fed. Appx. 839, 842 (10th Cir. 2007)(internal quote marks and citation omitted).

**8** King Obj. Br. at 4, 5, 7**.**

(because they aren't class members) but that they *fear* the settlement might be used to defend their possible legal claims.[9] This "fear" doesn't confer standing.

That leaves eight objectors – Anne L., E.L., Peter P., B.P., H.R, D.R., M.R. and J.S. But of these eight, four (Annie L., Peter P., H.R. and M.R.) are parents who are asserting objections on behalf of their children.[10] They are plaintiffs in other cases whose standing is asserted because they are the parents of children who received treatment. They have no independent legal claim. They are not class members. Their right to object is conferred only through their children. That leaves *four* <u>objections</u>, out of a class of 350.

## II.     SETTLEMENT DETAILS AND BENEFITS

The dispute behind this case dates back to 2020, when plaintiff R.B.'s then-minor son J.B. was treated for mental health disorders at an Arizona-licensed residential treatment center. By the time of his discharge, J.B. incurred—and R.B. paid—$68,417.99 in costs for mental health and substance abuse treatment services rendered. R.B. sought coverage under the health plan that covered both him and his minor son. Defendant UBH denied the claim, in total, "[b]ased on the provider being unable to be authorized ... due to the unproven therapy of equine therapy." R.B. then appealed this denial, which UBH affirmed by letter dated December 12, 2020.[11]

The case commenced in 2021. The burden of the case is that UBH's coverage policy – to reject all mental health and substance abuse coverage where a component of the

---

[9] *Id.* at 3, 4, 5, 7.
[10] *Id.* at 9, 11, 13, 15.
[11] *R.B. v. United Behav. Health,* 2023 U.S. Dist. LEXIS 162918, *3 (N.D.N.Y. Sept. 14, 2023).

provider's services was considered experimental - violated the Parity Act because UBH didn't deny all coverage for comparable medical services when a portion of those services was deemed experimental. UBH, then and now, denies 1) that it has the challenged policy 2) that the class is certifiable 3) that it is possible to recalculate benefits even if Plaintiffs are right.

Over vigorous objection by UBH, the Court certified the class in 2023.[12] UBH petitioned the 2nd Circuit for discretionary review of the appeal, which was denied. The parties then agreed to mediate, and this settlement ultimately resulted. The Court preliminarily approved this settlement on January 17, 2025.[13]

The proposed settlement contemplates the payment of $1,415,000 into a common fund. After accounting for attorneys' fees and related costs, there is $872,081 left for the class, which is divided into three tiers: 1) The Wilderness tier consists of class members who were treated at wilderness therapy programs and whose entire coverage request was denied because UBH deemed wilderness to be experimental. They will receive, roughly, $964. Three class members receive credit for two wilderness treatments and get paid twice, or $1,928 each. 2) The Multiple tier consists of class members who were treated at RTCs and whose claims were denied, in total, for multiple reasons, including a contention that the services received were experimental. They will receive, roughly, $9,629 apiece. The Experimental tier consists of persons who received treatment at RTCs

---

[12] *R.B. v. United Behav. Health*, 2023 U.S. Dist. LEXIS 162918 (N.D.N.Y. Sept. 14, 2023).
[13] Docket #113.

and who were denied treatment solely because UBH deemed the services rendered experimental. They will receive, roughly, $19,307.

Below is a table that sets forth the proposed distribution.[14]

| 350 Class Members 337 Class Members Located | | | |
|---|---|---|---|
| Wilderness Tier 279 class members | Double Wilderness Tier 3 class members | Multiple Tier 48 class members | Experimental Tier 7 class members |
| $268,956 total payout | $5,700 total payout | $462,192 total payout | $135,149 total payout |

The common fund is non-recourse; uncashed checks will eventually be credited back into the fund and – if warranted – the claims administrator will oversee a second distribution, based on the same *per capita* recoveries as the first distribution. (If the value of the uncashed checks doesn't warrant a second distribution, the settlement contemplates a *cy pres* award to a related charity. There is no claims process; if the settlement is finally approved, the claims administrator is authorized to distribute checks.

### III.    NOTICE TO THE CLASS

Plaintiffs have submitted the Declaration of Stephanie M. Valerio, assistant project manager for RG/2 Claims Administration LLC, the company approved by the Court to perform claims administration duties. Valerio affies that the class size is 350 persons, and either through direct mailing, skip tracing and phone calls, RG/2 was able to locate 337 class

---

[14] *See generally* Valerio Dec (attached as **Ex. 1** to this brief).

members to provide the Court-approved notice. [15] The claims administrator has fulfilled its

duties, and no one asserts otherwise.

## IV.    CAFA NOTICE

All relevant federal and state officials have been served with notice of the

settlement, pursuant to the Class Action Fairness Act.[16]

## V.    THE SETTLEMENT SHOULD BE APPROVED

### A.    Legal standard

In evaluating a class action settlement, courts in the 2nd Circuit generally consider

the nine factors set forth in *City of Detroit v. Grinnell Corp.*[17] The *Grinnell* factors are (**1**) the

complexity, expense, and likely duration of the litigation; (**2**) the reaction of the class to

the settlement; (**3**) the stage of the proceedings and the amount of discovery completed;

(**4**) the risks of establishing liability; (**5**) the risks of establishing damages; (**6**) the risks of

maintaining the class action through the trial; (**7**) the ability of the defendant to withstand

a greater judgment; (**8**) the range of reasonableness of the settlement fund in light of the

best possible recover; and (**9**) the range of reasonableness of the settlement fund to a

possible recovery in light of all the attendant risks of litigation.[18]

As a result of amendments to Rule 23, the *Grinnell* factors are now, in material

part, set forth in Rule 23(e)(2), which requires courts to analyze four factors: (**A**) the

adequacy of representation by class representatives and class counsel; (**B**) whether

---

[15] *See generally* Valerio Dec. (**Ex. 1**).

[16] Steinberg Dec. (filed by UBH).

[17] 495 F.2d 448, 463 (2nd Cir. 1974).

[18] *Id.*

settlement negotiations were done fairly at arm's length; (**C**) the adequacy of relief provided under the settlement (including the terms of any proposed award of attorneys' fees); and (**D**) the equity of treatment of class members relative to one another. This brief will address, first, the Rule 23(e)(2) factors (which overlap with many of the *Grinnell* tests), and then discuss those *Grinnell* elements not otherwise addressed.[19]

## B.     Rule 23(e)(2)(A)-(B) – *Procedural fairness*

Rule 23(e)(2)(A) requires courts to consider whether "the class representatives and class counsel have adequately represented the class." Rule 23(e)(2)(B) identifies another factor: whether "the proposal was negotiated at arms-length." These two paragraphs constitute the procedural analysis and examine "the conduct of the litigation and of the negotiations leading up to the proposed settlement."[20]

### 1.     Rule 23(e)(2)(A) – *adequate representation by class representatives and class counsel*

"These paragraphs identify matters that might be described as 'procedural' concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement."[21]

#### a.     <u>Class representatives</u>

In its decision granting class certification, this Court found that plaintiff R.B. "will

---

[19] *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019) ("The Court understands the new Rule 23(e) factors to add to, rather than displace, the *Grinnell* factors.... Indeed, there is significant overlap between the *Grinnell* factors and the Rule 23(e)(2)(C—D) factors, as they both guide a court's substantive, as opposed to procedural, analysis.").

[20] Fed. R. Civ. P. 23 advisory committee's notes to 2018 amendment.

[21] *Id.*

fairly and adequately protect the interests of the class."[22] The Court held:

> RB has carried his burden[.]RB has submitted a declaration outlining, *inter alia*, that: (i) he is familiar with his responsibilities as a class representative and willingly undertakes his duty to act in the best interests of the class; (ii) he is not aware of any conflicts with members of the proposed class that would disqualify him or make it difficult to carry out his class representative obligations; (iii) he has participated actively in this lawsuit; and (iv) he recognizes and accepts that as class representative he will not receive any special benefits or recovery not afforded to other members of the class.[23]

Nothing has changed. This requirement is met.

*King Objectors: They don't directly address this issue. A single sentence asserts that R.B. doesn't have standing to represent them;[24] this argument – which primarily focuses on the release - is addressed below in the "release from liability" section.*

### b.    Class counsel

"A court reviewing a proposed settlement must pay close attention to the negotiating process, to ensure that . . . plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests."[25] "If the court has appointed class counsel or interim class counsel, it will have made an initial evaluation of counsel's capacities and experience."  That occurred here. In the Court's class certification order, this Court found

> it is clear that class counsel is adequately qualified and experienced. Counsel has done extensive work in identifying the claims in this action, are highly experienced in class action litigation, specifically ERISA class actions, and are willing to commit the necessary resources to this litigation.[26]

---

[22] *R.B. v. United Behav. Health*, 2023 U.S. Dist. LEXIS 162918, *7 (N.D.N.Y. Sept. 14, 2023).
[23] *Id.* at *8.
[24] King Obj. at 21.
[25] *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2nd Cir. 2001)(citation and internal quotations omitted).
[26] *R.B.*, 2023 U.S. Dist. LEXIS 162918, *8.

Since that order, the parties mediated before Rodney A. Max, a well-known national mediator.[27] Max affied that counsel's work was more than "adequate":

- *"The proposed Settlement is the product of lengthy and particularly hard-fought negotiations which took place on an ongoing basis between August and September 2024. The caliber of the representation of both sides was extraordinary in my experience. The mediation consisted of multiple mediation sessions among myself and counsel for the plaintiffs and defendants."*[28]

- *"These negotiations were exhausting, and at times frustrating, for the parties and their counsel. The session involved discussions with all counsel and representatives of those parties who were present, extended sessions with each side, bi-lateral discussions with counsel, and ex parte discussions with the parties concerning their various positions. The discussions allowed the parties to express their respective views of the strengths and weaknesses of the respective positions in the case. I never witnessed or sensed any collusiveness between the parties. To the contrary, at each point during these negotiations, the settlement process was conducted at arm's-length and, while professionally conducted, was quite adversarial. An agreement in principle was ultimately achieved after mediation concluded, when both parties accepted my mediator's proposal $1,415,000 'all in' to settle the case. Both parties separately agreed to the mediator's proposal, which settled this matter, pending written agreement and this Court's approval."*[29]

This Rule 23(e)(2) requirement is satisfied.

***King Objectors:*** *The King Objectors don't frontally address this element, but one of their complaints might come under this heading, so Plaintiffs will address it here. Specifically, the King Objectors complain that the Court's certification under Fed. R. Civ. P. 23(b)(1) is unfair because they have no right to opt out.[30] This argument is wrong, for two reasons. First, in challenging the*

---

[27] *Brna v. Isle of Capri Casinos, Inc.*, 2018 U.S. Dist. LEXIS 26662, *4-5 (S.D. Fla. Feb. 20, 2018)("This case was mediated by Rodney Max, who is not only well known for mediating class actions but who has been recognized in this district as probably one of the top mediators in the country. His involvement serves to reject any notion that a resulting settlement was the product of collusion.")(internal quote marks and citation omitted).

[28] Max Dec. (Docket #112-3), at ¶ 12.

[29] *Id.*, ¶ 14.

[30] King Obj. at 2.

Court's certification decision, the King Objectors apply the wrong legal standard. Because the 2nd Circuit has already denied UBH's petition for interlocutory review, reconsideration of the class certification order is not available at this stage:

> After a thorough review of the case law in this and other circuits, the Court has been unable to find a single case in which a district court entertained a motion for reconsideration of an order certifying a class after a request for interlocutory review of that order pursuant to Rule 23(f) was denied. As an issue of first impression, the Court finds that motions for reconsideration are barred under such circumstances. To hold otherwise would allow litigants to, at least in theory, receive relief from a district court that has already been denied by a court of appeals. The hierarchy on which our federal judicial system is based cannot countenance such a result.[31]

_Second_, there is nothing wrong with a 23(b)(1) mandatory class that a) doesn't afford the right to opt out b) where money is recovered (which is the King Objectors' central complaint).[32] In _Robertson v. National Basketball Association_,[33] three out of 479 class members objected to a 23(b)(1) class settlement in part because the settlement did not permit them to opt-out. The Second Circuit rejected the objection and affirmed the approval of the settlement, holding that "when appropriate notice and opportunity have been provided, preclusion of the opt-out right in a (b)(1) settlement does not violate due process."[34] Similarly, in _TBK Partners, Ltd. v. Western Union Corp._,[35] the Second Circuit affirmed a settlement where class members could not opt out of the settlement even though the majority of class members opposed the settlement.[36] The court explained "the non-opt-out nature of a class does not give even objectors who make up the

---

[31] _In re Mercedes-Benz Tele Aid Contract Litig._, 267 F.R.D. 113, 135 (D. N.J. 2010).

[32] King Obj. at 2 ("This damages class, which appears more appropriately considered under Rule 23(b)(3), should be given opt-out rights.").

[33] 556 F.2d 682 (2nd Cir. 1977).

[34] _Id._ at 685-86.

[35] 675 F.2d 456 (2nd Cir. 2020).

[36] _Id._ at 462–63 & n.7 (2d Cir. 2020).

*'majority' of the class any 'veto' of the settlement.*"[37] .

**C.    Rule 23(e)(2)(C)-(D) –** *Substantive fairness*

These two paragraphs constitute the substantive analysis and examine "[t]he relief that the settlement is expected to provide to class members."[38]

*1.    Rule 23(e)(2)(C)*

This rule requires courts to consider

> the costs, risks, and delay of trial and appeal; the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; the terms of any proposed award of attorney's fees, including timing of payment; and any agreement required to be identified under Rule 23(e)(3).

**a.    Costs, risk and delay of trial and appeal**

Under this Rule 23(e)(2) factor, "courts may need to forecast the likely range of possible classwide recoveries and the likelihood of success in obtaining such results."[39] This element involves consideration of four *Grinnell* factors: 1) the complexity, expense and likely duration of the litigation, 2) the risks of establishing liability, 3) the risk of establishing damages, and 4) the risks of maintaining the class through trial.[40] "The Court uses these *Grinnell* factors to guide its assessment of whether the Court will likely find that this Rule 23(e)(2) factor will weigh in favor of granting final approval."[41]

**i.    Complexity, expense and likely duration of litigation**

"Settlement is favored if settlement results in 'substantial and tangible present

---

[37] *Id.* at 463 n. 7.
[38] Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment.
[39] *Id.*
[40] *In re Payment Card Interchange Fee Merch. Disc. Antit.*, 330 F.R.D. 11, 36 (E.D.N.Y. 2019).
[41] *Id.*

recovery, without the attendant risk and delay of trial.' "[42] To some extent, complexity is a given: "[C]lass action suits in general have a well deserved reputation as being most complex."[43] Here, though discovery was complete when the settlement occurred, there was a long way to go: the parties would have filed cross-dispositive motions; the case would have tried if the motions didn't resolve the case; the losing party, and maybe both parties, would have appealed to the 2nd Circuit. At minimum, there were years to go before this case concludes, absent settlement. This subpart favors approval.

*King Objectors: The Objectors misunderstand this subpart, and apply it against their own individual cases, and not the case before the Court:* "[C]ounsel for the objectors represent the cases for which they represent the objectors already in litigation are not particularly complex, expensive, or interminable to litigate."[44] *Counsel's "represent[ation]" does nothing more than chase a strawman.*

### ii. Risks of establishing liability

This factor does not require the Court to adjudicate the disputed issues or decide unsettled questions; "rather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement."[45] "Courts approve settlements where plaintiffs would have faced significant legal and factual obstacles []."[46]

---

[42] *Sykes v. Mel Harris & Assocs., LLC*, 2016 U.S. Dist. LEXIS 74566,*34  (S.D.N.Y. May 24, 2016) (quote marks and citation omitted).
[43] *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999)(internal quote marks and citation omitted).
[44] King Obj. at 23.
[45] *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004)(citations omitted).
[46] *Id.*

This is an "as applied" Parity Act claim. In that case, Plaintiffs must show "that the mental health or substance abuse services at issue meet the criteria imposed by [their] insurance plan and that the insurer imposed some additional criteria to deny coverage of the services at issue."[47] There appear to be a total of three published Parity Act "as applied" decisions where plaintiffs have prevailed.[48]

In this case, UBH maintained that Plaintiffs had it wrong: it argues that there was no protocol or internal rule that it applied in violation of the Parity Act. This is a threshold unresolved issue, and if Plaintiffs lost it their case was over. This represents a real liability risk that risk satisfies this subpart. UBH also maintains that it already covers "proven" services at otherwise experimental residential programs, when those portions are submitted separately for coverage. These liability issues were resolved. In addition, UBH would certainly argue that liability could not be established without mini-trials on a case-by-case basis. The risk also has to account for the fact that the majority of class members' denials were "messy" and included reasons for denial beyond the experimental designation. Similarly, because successful ERISA litigants are usually required to remand their coverage request, plaintiffs stand the risk of being subject to new coverage defenses even if they won.[49] In other words, the most likely outcome if plaintiffs won isn't a

---

[47] *L.P. v. BCBSM, Inc.*, 2020 U.S. Dist. LEXIS 35239, *16-17 (D. Minn. Jan. 17, 2020)(internal quote marks and citation omitted).

[48] *Id.; K.D. v. Anthem Blue Cross & Blue Shield*, 2023 U.S. Dist. LEXIS 167836 (D. Utah Sept. 20, 2023); *S.K. v. United Behavioral Health*, 2023 U.S. Dist. LEXIS 180360 (D. Utah Sept. 29, 2023).

[49] *E.g., Hilderbrand v. Nat'l Elec. Ben Fund*, 2016 U.S. Dist. LEXIS 18574, *9 (C.D. Ill. Feb. 16, 2016)("The Court granted summary judgment … in favor of Hilderbrand and remanded the claim for benefits to the NEBF Trustees for a *de novo* benefits determination…").

judgement, it's a remand order.

**King Objectors:** *The Objectors' assertion that Parity Act cases "are relatively binary; either [UBH] has violated [the Parity Act] or it has not"*[50] *misses the point, which focuses on the* <u>whether</u> *UBH violated the Parity Act, not whether it presents a clean – "binary" – question. The Objectors also not do address that the majority of the class stand the risk of being subject to new coverage defenses even if they won given that most of the claims were denied for multiple, independent reasons.*

### iii.    Risks of establishing damages

Courts recognize that

> Even if Plaintiffs were to prevail on liability, they would still face substantial risks in proving damages at trial. For example, establishing damages would require Plaintiffs to show the actual value of Defendants' services—a difficult, though not impossible, undertaking.[51]

Plaintiffs faced a daunting challenge to establish a class recovery. Their theory is that benefits should have been paid for services that fall outside the "experimental" designation. But the calculation of those benefits is not the providers' charge. Plaintiffs have to account for the fact that UBH discounts provider bills, which leaves class members responsible to pay the difference between what's billed and what's authorized. Plaintiffs would also have to account for the fact their deductibles, copayments and benefit maximums – all plan terms – reduce the dollar value of the benefits paid. Plaintiffs would also have to account that the "un-experimental" covered services differed among providers, and – complicating this further – many of the providers who treated class

---

[50] King Obj. at 23.
[51] *Rodriguez v. It's Just Lunch Int'l,* 2019 U.S. Dist. LEXIS 228270, *22 (S.D.N.Y. Feb. 28, 2019).

members have closed over the last few years. .  In addition, UBH doesn't have records of the cost of the non-experimental portions of residential services when they were not submitted for coverage, and providers typically don't break them out either. Plaintiff's formula for calculating the benefits owed is based on a generic database. Plaintiff could not prove up each individual class members' actual benefits owed, if the Court required.

**King Objectors:** *The Objectors completely ignore the complexities involved here,* [52] *asserting) that recovery would be the unpaid benefits or (incorrectly) the out-of-pocket losses.* [53] *The hard part is calculating the benefits, a problem ignored by the King Objectors.*

### iv.    Risks of maintaining the class through trial

On September 14, 2023, this Court – over vigorous objection by UBH – certified the class as described originally in plaintiff R.B.'s Complaint.   The Court's certification decision, in some respects, stands alone. Of the reported Parity Act cases, there appear to be only two other cases where contested certification was granted and the requested relief was the payment of benefits. In one, *Wilson v. Anthem Health Plans of Ky., Inc.,* the class consisted of only 27 people.[54] The other case, *D.T v. NECA/IBEW Family Medical Care Plan*, the Parity Act claim was brought *against a single plan.* [55] The point here is that decertification, either at the Trial Court level or at the 2nd Circuit, is an undeniable risk.

---

[52] King Obj. at 24.

[53] *See, e.g., Bast v. Prudential Ins. Co. of America*, 150 F.3d 1003, 1009 (9th Cir. 1998), *cert. denied*, ("[O]ut of pocket costs [] are not recoverable under ERISA.").

[54] 2017 U.S. Dist. LEXIS 572 (W.D. Ky. Jan. 4, 2017).

[55] 2019 U.S. Dist. LEXIS 50683 (W.D. Wash. March 26, 2019).

And "[t]he risk that Defendants could in fact succeed in their efforts to decertify the class militates in favor of settlement approval."[56]

     ***King Objectors:*** *The Objectors concede this point.*[57]

### b.    <u>Effectiveness of distributing relief to the class</u>

This factor requires courts to look at the method of processing class-member claims.[58] "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding."[59] Start with this: A plan of allocation "need not be perfect."[60] To warrant approval, "the plan of allocation must also meet the standards by which the settlement was scrutinized — namely, it must be fair and adequate. [] An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel."[61]

The proposed settlement here easily satisfies this requirement. Three important facts favor this result. *First*, the recovery is non-recourse. A few class members cannot be found and a few others have died since their services were rendered. Their recoveries aren't returned to UBH; instead, the monies will either be returned to the class fund or

---

[56] *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 268-69 (S.D.N.Y. 2012).

[57] King Obj. at 24 ("[T]he objectors acknowledge that that class, as written, may not be able to be maintained throughout trial.").

[58] Fed. R. Civ. P. 23(e)(2)(C)(ii).

[59] Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment.

[60] *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, 2007 U.S. Dist. LEXIS 57918, *32 (S.D.N.Y. July 27, 2007) (collecting cases).

[61] *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005) (internal citations and quotation marks omitted).

sent to the class members' estates. *Second*, class members aren't burdened by a claims process, which inevitably reduces participation. If the settlement is approved, checks will be sent. *Third*, the proposed settlement appropriately recognizes that a different calculation of benefits is appropriate, depending on the type of services rendered. In general, if a class member received services at an RTC, the non-experimental services that should have been paid include room and board, individual, group and family therapy. In general, if a class member received services at a wilderness program, the non-experimental services that should have been covered are individual, group and family therapy, which occurred much less often. The settlement accounts for this difference, which favors final approval.

**King Objectors:** *The King Objectors don't frontally address this factor, other than to complain that they aren't recovering enough. This complaint is discussed in the "range of reasonableness" section below.*

### c.    The terms of any proposed award of attorneys' fees

No one has objected, or even commented on, Plaintiffs' request for $471,666 in fees and the reimbursement of $32,500 and the payment of all notice and administrative costs, estimated to be about $20,000.[62] The request is reasonable, consistent with the law in this Circuit and elsewhere,[63] and should be approved.

**King Objectors:** *They don't address this topic.*

---

[62] *See generally* Pl. Br. (Docket No. 115-1).

[63] *See Schutter v. Tarena Int'l, Inc.*, 2024 U.S. Dist. LEXIS 161838, *40 (E.D.N.Y. Sept. 9, 2024) ("An award of one-third, or 33.3%, of the Settlement Fund is within the range that courts in this Circuit have awarded.").

d.    **Release from liability**

The Court should also consider the proposed release from liability as an additional factor under this section, "as it affects the determination of the fairness, reasonableness and adequacy of class relief."[64] "The law is well established in this Circuit and others that class action releases may include claims not presented and even those which could not have been presented as long as the released conduct arises out of the 'identical factual predicate' as the settled conduct."[65]

The proposed Release aligns with this requirement, discharging all claims that were or could have been asserted in the Complaint arising out of "mental health or substance abuse treatment received at a residential treatment or wilderness program, based in whole or in part on a determination that the treatment or a component of the treatment was experimental, unproven or investigatory."[66]

*King Objectors: This is the King Objectors' main complaint (which it merges with a "standing" argument[67]), as they argue that release improperly includes class members who were treated at wilderness programs, while the certified class limits class members treated at "licensed residential treatment center[s]."[68] Here, the King Objectors fail to acknowledge that all class members submitted their requests for coverage as "residential" services.*

*A little background is necessary. It can sometimes be difficult to distinguish between*

---

[64] *Caccavale v. Hewlett-Packard Co.*, 2025 U.S. Dist. LEXIS 47302, *20 (E.D.N.Y. March 14, 2025)(internal quote marks and citation omitted).

[65] *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 107 (2nd Cir. 2005).

[66] Docket #112-2 at 5, ¶ 1.17.

[67] King Obj. at 21.

[68] King Obj. at 1.

*wilderness therapy programs and residential treatment centers. "Some wilderness therapy facilities [] fail to offer sufficient medical care. But others may offer the same elements as a conventional RTC program while incorporating a wilderness component."[69] This isn't an accident. UBH's corporate representative testified: "From what I know of the wilderness programs that we have worked with, most of them define themselves as a residential treatment center."[70]*

*    And that's the key here. Every class member requested authorization for coverage at the residential level of care. The database used to collect class members claims pulled only those claims where the provider and/or the subscriber sought coverage for "residential treatment."[71] It was not unfair or inappropriate for UBH to accept the King Objectors' representations that the services were for "residential treatment." The claims were adjudicated by UBH as "residential" just as the King Objectors requested. All claims were treated as "residential" and denied based on UBH's contention that at least some of the services received were experimental, investigational or unproven. The class is united by their request for coverage at a residential level of care.*

### 2.    *Rule 23(e)(2)(D)*

Consideration under this factor "could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear

---

[69] *Jonathan Z. v. Oxford Health Plans*, 2022 U.S. Dist. LEXIS 121033, *59 (D. Utah July 7, 2022).

[70] Docket #70-1 (UBH 30b6 deposition transcript) at 81:10-13.

[71] Joint Stipulation (Docket #68) at ¶7d (" 'Residential' treatment as referred to in Column P (and as used to implement the agreed parameters discussed above) refers to the level of care for which the provider and/or subscriber sought coverage, as provided by the requestor to UBH and logged by UBH into Linx [database]."); ¶8i (same).

on the apportionment of relief."[72] As discussed above, the proposed settlement accounts for class members in different position, depending on the type of services rendered. In general, if a class member received services at an RTC, the non-experimental services that should have been paid include room and board, individual, group and family therapy. In general, if a class member received services at a wilderness program, the non-experimental services that should have been covered are individual, group and family therapy, which occurred much less often. The settlement accounts for this difference, which favors final approval.

    *King Objectors: The King Objectors don't frontally address this test.*

## D.    Remaining *Grinnell* tests

Having considered each of the Rule 23(e)(2) factors, the four remaining *Grinnell* factors are the range of reasonableness of the settlement, the reaction of the class to the settlement, the stage of the proceedings and the amount of discovery completed, and the ability of the defendants to withstand a greater judgment.[73]

### 1.    *Reaction of the class*

The response to the settlement has been positive. "The fact that the vast majority of class members neither objected nor opted out is a strong indication that the proposed settlement is fair, reasonable and adequate."[74] This *Grinnell* factor weighs strongly in favor of approval.

---

[72] Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment.

[73] *Marin v. 310 Bowery Grp. LLC*, 2025 U.S. Dist. LEXIS 53631, *25 (S.D.N.Y. March 24, 2025); *Caccavale*, 2024 U.S. Dist. LEXIS 174340, *28-29.

[74] *Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008).

*King Objectors:* They assert that "the objectors' response here speaks for itself,"[75] which gets this element backwards. Four objections out of 350 class members is an objection rate of 1.14 percent. That's what speaks for itself.

### 2. Stage of the proceedings and amount of discovery completed

The purpose of this test is to assure the Court "that counsel for plaintiffs have weighed their position based on a full consideration of the possibilities facing them."[76] Here, this case settled late. The parties had completed discovery; Plaintiffs had prevailed on their class certification motion and the 2nd Circuit had denied UBH's petition for interlocutory appeal. When the parties conducted their mediation, they understood each other's legal position, and had assembled enough of a factual record to try the case if mediation settled. This favors approval.

*King Objectors:* The Objectors get this test backward, arguing that because "no additional discovery is required," this factor did not support approving the proposed settlement.[77] The exact opposite is true: the fact that discovery was complete *favors* approval.

### 3. Ability of UBH to withstand greater judgment

A defendant's "ability to pay is much less important than the other *Grinnell* factors, especially where the other factors weigh in favor of approving settlement."[78] Further, "a defendant's ability to withstand a greater judgment, standing

---

[75] King Obj. at 23.
[76] *Klein ex rel. Ira v. PDG Remediation, Inc.*, 1999 U.S. Dist. LEXIS 650, *7 (S.D.N.Y. Jan. 28, 1999).
[77] King Obj. at 23.
[78] *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 303 (E.D.N.Y. 2015).

alone, does not suggest that the settlement is unfair."[79] There is no doubt UBH can pay.

**King Objectors:** *The King Objectors get this right.*[80]

### 4.    Range of reasonableness of the settlement in light of the best possible recovery and all the attendant risks of litigation

The range of reasonableness is "a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."[81]  Indeed,

> the fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.[82] ... There is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.[83]

Plaintiffs' recovery isn't 100 cents on the dollar, but it is far more than what's required to satisfy what's required here. As explained above, individual class members recoveries have to reflect 1) that UBH discounts providers' claims significantly when it authorizes payment 2) that UBH's obligations are reduced by subscribers' deductible, copayment and maximum benefit provisions 3) that the services outside of the "experimental, investigational or unproven" designation among different providers 4) that many of the class members' denials were "messy" and included reasons beyond the

---

[79] *Id.* (citation and quote marks omitted).

[80] King Obj. at 25 (UBH "can pay a greater settlement than the one negotiated in the proposed settlement.").

[81] *Wal-Mart Stores*, 396 F.3d at 119 (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

[82] *Grinnell, 495 F.2d at 455*.

[83] *Id.* at 455 n.2; *see also Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) ("It is well-settled that a case settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair.")(quote marks and citation omitted).

"experimental, investigational or unproven" characterization, and 5) that, even if coverage was initially authorized, UBH would be unlikely to continue authorizing coverage for the many months the class members were treated.

Plaintiff believes that the settlement represents between 18% and 50% of the total possible recovery among class members based on their liability theory. This compares favorably with recoveries in other ERISA class actions.[84] This factor, too, favors approval of the settlement. If the "range of reasonableness" is compared against Parity Act cases, and not ERISA cases generally (and plaintiff believes that's appropriate), the settlement is even stronger. All but a small handful of class cases brought under the Parity Act have either lost on motion; failed to certify; or certified a much smaller class. In light of the significant litigation risk and risk of decertification, this settlement is well within a "range of reasonableness."

*King Objectors: The King Objectors make two arguments. <u>First</u>, the King Objectors suggest that providers' charges equals case value;[85] <u>second</u>, the King Objectors' counsel offers his own contrary opinion: "The objectors' counsel has litigated hundreds of similar cases and anticipates better results than those offered in the proposed settlement for those objecting to this*

---

[84] *Sims v. BB&T Corp.*, 2019 U.S. Dist. LEXIS 75837 (M.D.N.C. May 6, 2019)(approving settlement representing 19% of estimated damages); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 2018 U.S. Dist. LEXIS 127131 (C.D. Cal. July 30, 2018)(approving settlement representing about 25% of estimated losses); *Johnson v. Fujitsu Tech. & Business of Am., Inc.*, 2018 U.S. Dist. LEXIS 80219 (N.D. Cal. May 11, 2018)(approving settlement representing 10% of damage potential); *see also In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp.2d 706, 715 (E.D. Pa. 2001)(noting that, since 1995, class action settlements typically have "recovered between 5.5% and 6.2% of the class members' estimated losses.").

[85] King Obj. Br. at 3; 6; 8; 10; 12; 14; 16; 18.

*proposed settlement."*[86] *The problem is that there is no recognition of litigation risk. These are hard cases. An electronic search produced 88 ERISA mental health or chemical dependency "medical necessity" cases that were lost on the merits at summary judgment; this includes cases brought both by class counsel and King Objector's counsel.*[87] *A fair "range of reasonableness" acknowledges that these cases can be lost.*

## VI.    CONCLUSION

No settlement is perfect. But the settlement before this Court is, on its worst day, good enough to warrant final approval. Plaintiffs have taken on a complicated case informed by a novel legal theory and without the aid of helpful legal precedent. The

---

[86] *Id.* at 25.

[87] *Christine S. v. Blue Cross Blue Shield of N.M.*, 2021 U.S. Dist. LEXIS 199330, *22-23 (D. Utah Oct. 14, 2021)("[T]he court holds that Plaintiffs have failed to carry their burden of proving that treatment at Elevations and Cherry Gulch outside of the covered period was medically necessary.");  *Jonathan Z v. Oxford Health Plans*, 2022 U.S. Dist. LEXIS 121033, *50 (D. Utah July 7, 2022)("[T]he court GRANTS Oxford's motion for summary judgment  and DENIES Plaintiffs' motion for summary judgment on Plaintiffs' ERISA claims for denial of benefits at all three facilities."); *T.G. v. United Healthcare Servs.*, 2020 U.S. Dist. LEXIS 235536 (D. Minn. Dec. 15, 2020)("Although the Court may disagree with United's determinations and does not countenance the sloppy and confusing justifications United offered for its denial of benefits, United's determination was reasonable in light of all of the evidence in the record."); *A.G. v. Cmty. Ins. Co.*, 2020 U.S. Dist. LEXIS 223533 (S.D. Ohio Nov. 30, 2020)("Anthem did not arbitrarily and capriciously conclude that A.G.'s treatment at a Sunrise was not Medically Necessarily.").

proposed settlement confers material relief and is favored by all but a tiny fraction of the class. The Court should grant final approval. For the Court's convenience, Plaintiffs have attached PDF versions of proposed orders (**Ex. 2** and **Ex. 3**) and will separately transmit Word versions of these proposed orders directly to the Court.

Dated: 5.7.2025.                                    Respectfully submitted,

                                                     _/s/ Jordan M. Lewis (pro hac vice_)
                                                     **JORDAN LEWIS, P.A.**
                                                     Jordan Lewis (Fl. Bar No. 97997)*
                                                     4473 N.E. 11th Avenue
                                                     Fort Lauderdale, FL  33334
                                                     Telephone:  (954) 616-8995
                                                     Facsimile:  (954) 206-0374
                                                     Email:  Jordan@jml-lawfirm.com

                                                     Randi A. Kassan (N.D.N.Y. Bar No. 517821)
                                                     **MILBERG COLEMAN BRYSON
                                                     PHILLIPS GROSSMAN**
                                                     100 Garden City Plaza, Suite 500
                                                     Garden City, NY 11530
                                                     516-741-5600
                                                     Fax: 516-741-0128
                                                     Email: rkassan@milberg.com

                                                     Arthur M. Stock*
                                                     Ryan P. McMillan*
                                                     **MILBERG COLEMAN BRYSON
                                                     PHILLIPS GROSSMAN**
                                                     800 S Gay Street - Suite 1100
                                                     Knoxville, TN 37929
                                                     215-875-5704
                                                     Fax: 215-875-4604
                                                     Email: astock@milberg.com
                                                     Email: rmcmillan@milberg.com

## CERTIFICATE OF SERVICE

I certify that on May 7, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on the following counsel of record via transmission of Notices of Electronic Filing by CM/ECF:

| | |
|---|---|
| Geoffrey M. Sigler<br>Clare F. Steinberg<br>GIBSON, DUNN & CRUTCHER, LLP<br>1050 Connecticut Avenue N.W.<br>Washington, D.C.<br>20036<br>gsigler@gibsondunn.com<br>csteinberg@gibsondunn.com | James A. Tsouvalas<br>GIBSON, DUNN & CRUTCHER, LLP<br>333 South Grand Avenue<br>Los Angeles, CA<br>90071<br>jtsouvalas@gibsondunn.com |
| Brian S. King<br>Brian S. King, P.C.<br>420 East South Temple, Suite 420<br>Salt Lake City, UT 84111<br>brian@briansking.com | |

*/s/ Jordan Lewis*
Jordan Lewis