UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

R.B., individually, and on behalf
of all those similarly situated;

        Plaintiff,

   v.

United Behavioral Health;

        Defendant.

**Case No. 1:21-cv-00553-DNH-PJE**

**DEFENDANT'S RESPONSE TO REPLY IN SUPPORT OF OBJECTION**

Defendant United Behavioral Health ("UBH") submits the following response to the reply filed by the King Objectors regarding their objections to the class settlement (Dkt. 135, "Reply").

Based on the King Objectors' latest clarification of their position (Dkts. 135, 141, 142), there are only two remaining objectors out of the 350 class members. Their primary argument is based on a misreading of the settlement. They argue that the settlement "improperly expanded" the class definition by including persons who received wilderness therapy (which they refer to as a "Wilderness Subclass"), as opposed to residential treatment. Reply at 1–3. But the settlement class definition is ***identical*** to the class that this Court certified in litigation, and it has always included people whose coverage requests straddle residential and wilderness treatment—*i.e.*, persons who requested coverage for residential treatment while staying at wilderness programs. Because these people requested coverage for residential treatment, they meet the class definition (and always have). More than 99% of these class members have no objection to the settlement, so there is no basis to exclude any "Wilderness Subclass" from the settlement.

The two King Objectors also argue that they do not meet the class definition, based on documentation they submitted referring to their treatment as wilderness therapy. Other documents show, however, that they requested coverage for residential treatment, so they are properly in the class and should not be excluded.

UBH respectfully requests that the Court overrule the King objections and grant final approval to the settlement.

A. **The Class Definition Was Not "Expanded," And There Is No Basis To Exclude A "Wilderness Subclass."**

The settlement did not expand the class definition, as King argues, because it incorporates the same class definition that the Court certified in litigation. *Compare* Dkt. 97 at 13 (class certification decision) *with* Dkt. 112-2 at 3 (identical class definition in settlement). The class

1

definition has always been defined in reference to the level of care for which members *requested* coverage: "[a]ll persons . . . *whose requests for coverage* for mental health and substance abuse treatment services received at a licensed residential treatment center were denied in total based on its determination that a component of such services is considered experimental, investigational, or unproven." Dkt. 97 at 13 (emphasis added); *see* Dkt. 112-2 at 3 (identical provision in settlement).

The King Objectors argue in their Reply that the class definition was expanded through the settlement release, which refers to treatment at a "residential" or "wilderness program." Dkt. 112-2 at 5. But the release does not expand the class definition; rather, it defines the scope of the claims that class members are releasing. *Compare* Dkt. 112-2 at 5 (release) *with* Dkt. 112-2 at 3 (class definition). The reason why the release refers specifically to wilderness programs is that many class members *requested* coverage for residential treatment (and so meet the class definition), but actually received wilderness therapy that was denied as experimental. That was a key issue in the litigation, so the parties wanted the settlement to be clear that these claims were being released (in exchange for the substantial compensation provided for these claims under the settlement).

The evidence in this case has been clear—and the objectors do not dispute—that many class members requested coverage for residential treatment while receiving wilderness therapy. S*ee, e.g*., Dkt. 70-1 at 18 n.69 (citing Ex. 44, Tr. of 30(b)(6) deposition of UBH, at 81:10–13) ("From what I know of the wilderness programs that we have worked with, most of them define themselves as a residential treatment center."). Additionally, many wilderness programs go out of their way to refer to their services as residential treatment, because it increases the odds of coverage: many plans cover residential treatment, but do not cover wilderness programs. Dkt. 85 at 11 n.17.

2

Throughout this litigation, it has been clear from the class definition and evidentiary record that persons who requested coverage for residential treatment, but actually received wilderness therapy, are in the class. Dkt. 132 at 5 (summarizing evidence and arguments throughout litigation on this issue). Likewise, the parties have used the same methodology and database for identifying class members throughout the litigation and settlement. *See* Dkt. 131 at 19; Dkt. 132 at 3-4; Dkt. 68 (data stipulation) ("'Residential' treatment . . . refers to the level of care for which the provider and/or subscriber sought coverage, as provided by the requestor to UBH"). Wilderness providers can and do seek coverage of other levels of care, and the class does not include wilderness therapy claims where the member or provider sought coverage at a non-residential level of care. Dkt. 68.

King attempts to muddy the waters by arguing that UBH "falsely represent[ed]" that one of the objectors (E.L.) requested coverage for residential treatment, when in fact E.L. "consistently requested coverage for wilderness therapy and tried to correct United" on this point. Reply at 3 n.5. But it turns out that King was confusing UBH with one of its competitors, Cigna—so he withdrew this argument. Dkt. 142 (withdrawing reply as it related to E.L.); Dkt. 143 at 2–3 (same); *see* Dkts. 135-1 & 135-2 (Cigna EOBs and appeal correspondence).

Despite these errors, King nonetheless argues that a purported "Wilderness Subclass" (most of the entire class) should be excluded or permitted to opt out of the settlement. Reply at 11. His references to a "Wilderness Subclass" are a misnomer, because no one—not the King Objectors, not the other 99% of the class who had no objection, or anyone else—has ever sought certification of any subclass. The several hundred people who would be part of this purported subclass are part of the already-certified class in this case, they always have been, and there is no basis to exclude them. King has never presented any argument for certifying a subclass at this late

3

stage—after class certification and preliminary approval—and does not even attempt to argue that the purported subclass would satisfy Rule 23, as required.[1]

There is also no basis for allowing opt-outs—either for the two remaining objectors or the nearly 300 class members who received wilderness therapy (Dkt. 112-1 at 6) and never objected to the settlement. King argues that class members with wilderness claims are not receiving enough compensation (Dkt. 136 at 5), but 99% of these class members have not objected. King also ignores that claims for wilderness therapy are subject to unique defenses due to plan provisions excluding coverage, lack of proven efficacy, and safety concerns.[2] Indeed, many cases seeking coverage of wilderness therapy are dismissed by courts.[3]

King's arguments should be rejected, and the settlement should be approved without modification so that all class members can receive the substantial benefits provided to them under the settlement.

---

[1] *Colozzi v. St. Joseph's Hosp. Health Ctr*, 275 F.R.D. 75, 82 (N.D.N.Y. 2011) (J. Hurd) ("Each proposed subclass must independently meet the requirements of Rule 23."); *Ramirez v. Riverbay Corp.*, 39 F.Supp.3d 354, 362 (S.D.N.Y. 2014) ("When exercising its discretion to certify subclasses, a court must assure itself that each subclass independently meets the requirements of Rule 23."). This Court has also already decided that R.B. was able to adequately represent the entire class (including class members with wilderness claims) and that his claims were typical of the entire class. Dkt. 97 at 8–9. King has provided no argument to revisit this Court's order.

[2] Dkt. 85 at 11 n.17 (citing plan exclusions of wilderness therapy); Dkt. 86-45 at 2–3 (describing efficacy and safety concerns associated with wilderness programs); Jessica Schreifels Miller, *Nearly half of Utah's wilderness programs for 'trouble teens' closed in the last year. Here's what's happening*, THE SALT LAKE TRIBUNE (May 7, 2024), https://tinyurl.com/wfss8ntm (detailing controversial nature of wilderness therapy, and public backlash that has led to closures of more than half of Utah's wilderness programs after numerous deaths of minors staying at such facilities).

[3] *See, e.g.*, *S.F. v. CIGNA Health & Life Ins. Co.*, 2024 WL 1912359, at *2–8 (dismissing ERISA and Parity Act claims brought by King regarding plans that exclude coverage for wilderness therapy where the basis for denial was "the lack of peer reviewed, evidence-based scientific support for the effectiveness of wilderness therapy or outdoor youth programs").

4

### B.     The King Objectors Meet the Class Definition.

The King Objectors originally included 18 people who purported to object to the settlement. However, 14 of the 18 are not class members and so have no standing to object (Dkt. 131), and King has not disputed this or submitted any contrary information. King's Reply focused on only three of the four class member objectors, who he argued were "Wilderness Subclass" members because they received wilderness therapy. Dkt. 135. King now appears to concede that one of these three objections was based on a misreading of the objector's documents, leaving two remaining objectors. As explained below, all four objectors are properly part of the class.

**Objector E.L**. Despite having previously argued that UBH "falsely represent[ed]" the facts regarding E.L., King now acknowledges that these arguments were based on his own mistaken reading of E.L.'s documents. There is no longer any dispute that E.L. is part of the class.

E.L. initially objected and argued that she should be excluded from the settlement based on two different coverage denials (Open Sky and Solstice). The first of these, Open Sky, turned out to be completely irrelevant, because the denial was by Cigna, not UBH. *Supra* at 3. As for the second (Solstice), King now concedes that E.L.'s documents and the filings in E.L.'s separate case (in which King is E.L.'s counsel) show that E.L. requested coverage for *residential treatment* while at Solstice—so she is properly part of the class in this case. Reply at 9 (King concedes E.L.'s Solstice claims "properly fall under the class definition"); *see also* Dkt. 126 at 10 (alleging E.L. was denied coverage at Solstice because it offered unproven wilderness therapy, even though the facility was a residential treatment program.); Complaint ¶¶ 63–65, *Anne L. and E.L. v. Cigna*, No. 3:24-cv-01687 (D. Conn. July 30, 2024), Dkt. 1 (stating Solstice was a licensed RTC).

**Objector B.P.** King also misread B.P.'s documents and now appears to concede that B.P. is properly part of the class. King acknowledges that B.P. "received residential mental health and substance abuse treatment at Turn About Ranch, *a licensed residential treatment facility*" (Dkt.

5

126 at 11 (emphasis added)); *see* Dkt. 136 at 3 (concession by King that objectors who "receiv[ed] services at a licensed residential treatment facility" "fall[] within the class definition"). King no longer argues that B.P. should be part of a "Wilderness Subclass" or excluded for any other reason.

**Objector J.S.**   J.S. is in the class because her provider requested coverage for residential treatment. Ex. 1 at 4 (Oct. 2020 case notes where "the provider from Evoke at Entrada called to request authorization for the Mental Health Inpatient Residential level of care."). King relies on an appeal submitted months later, which referred to the facility as "Outdoor Behavioral Healthcare," and claims forms listing the level of care as "BH Outdoor/Wilderness." Reply at 5–6; Dkt. 135-6 (Feb. 2021 appeal letter); 135-4 (Nov. 2020 claim form). But this merely shows that Evoke was referred to sometimes as "residential" and sometimes as "outdoor;" it does not change that J.S. requested coverage for residential treatment and so is properly part of the class.

**Objector D.R.**   D.R. also requested coverage for residential treatment and so is properly in the class. Ex. 2 at 2 (case notes showing requested level of care in November 2017 was residential after provider billed 66 days of mental health residential treatment at Second Nature); *see also* Dkt. 135-10 at 1 (D.R.'s appeal correspondence indicating that Second Nature "submitted claims for treatment at the mental health residential level of care."). King refers to an appeal filed over a year after the initial request, in which D.R.'s parent stated that Second Nature did not provide residential care (Dkt. 135-9 at 4, Reply at 6),[4] but in his subsequent lawsuit (represented by King) D.R. again alleged that Second Nature provides "a Residential level of care." Pls.' Mot. for Summ. J. at 33, *H.R. and D.R. v. United Healthcare Ins. Co.*, No. 2:21-cv-00386-RJS (D. Utah Dec. 15, 2023), Dkt. 71. D.R. therefore is properly part of the class.

UBH respectfully requests that the Court grant final approval for the class settlement.

---

[4] King asserts that claim forms for D.R. are included as an exhibit but they were not.

|  |  |
|---|---|
| | Respectfully Submitted, |
| Dated: August 1, 2025 | |
| | *s/ Geoffrey M. Sigler* |
| | Geoffrey M. Sigler (admitted *Pro Hac Vice*) |
| | GIBSON, DUNN & CRUTCHER LLP |
| | 1700 M Street N.W. |
| | Washington, DC 20036 |
| | Telephone: (202) 887-3752 |
| | Facsimile: (202) 530-9635 |
| | Email: Gsigler@gibsondunn.com |
| | |
| | Clare F. Steinberg (admitted *Pro Hac Vice*) |
| | GIBSON, DUNN & CRUTCHER LLP |
| | 1700 M Street N.W. |
| | Washington, DC 20036 |
| | Telephone: (202) 955-8623 |
| | Facsimile: (202) 831-6052 |
| | Email: CSteinberg@Gibsondunn.com |
| | |
| | James A. Tsouvalas (admitted *Pro Hac Vice*) |
| | GIBSON, DUNN & CRUTCHER LLP |
| | 333 South Grand Avenue |
| | Los Angeles, CA 90071 |
| | Telephone: (213) 229-7644 |
| | Facsimile: (213) 229-6644 |
| | Email: JTsouvalas@gibsondunn.com |
| | |
| | *Attorneys for Defendant United Behavioral Health* |

## CERTIFICATE OF SERVICE

I, Clare F. Steinberg, hereby certify that on August 1, 2025, I electronically filed the foregoing with the Clerk of the Court of the United States District Court for the Northern District of New York by using the CM/ECF system. All participants are registered CM/ECF users and will be served by the CM/ECF system.

*s/ Clare F. Steinberg*

Clare F. Steinberg (*admitted Pro Hac Vice*)
